UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PETER J. LONG,

        Plaintiff,

v.                               **Case No. 14-cv-1218-pp**

**ROMAN KAPLAN, MD,**

        Defendant.

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 11), DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30), GRANTING PLAINTIFF'S MOTION TO STAY (DKT. NO. 47), AND SETTING NEW DEADLINES**

      On October 7, 2014, Judge Griesbach (the judge to whom this case was assigned at that time) issued an order allowing the plaintiff, Peter J. Long, to proceed on an Eighth Amendment claim that defendant Dr. Roman Kaplan was deliberately indifferent to the plaintiff's serious medical needs when he abruptly discontinued the plaintiff's prescription medication. Dkt. No. 3. The court also allowed the plaintiff to proceed with his state law negligence and medical malpractice claims. Id. On December 11, 2014, Judge Griesbach ordered the parties to file summary judgment motions by April 10, 2015, and to file responses to any such motions within thirty days (by May 10, 2015). Dkt. No. 9.

      On January 8, 2015, the plaintiff filed a motion for summary judgment, Dkt. No. 11, along with a supporting brief, Dkt. No. 12 and several supporting

1

documents, Dkt. Nos. 13-16. The defendant responded to the summary judgment motion on February 6, 2015, Dkt. No. 18, and the plaintiff filed a reply on February 23, 2015, Dkt. No. 25.

On April 10, 2015, the defendant filed a motion for summary judgment, Dkt. No. 30, which was fully briefed as of June 25, 2015.

On August 27, 2015, despite the fact that there were competing, fully briefed motions for summary judgment on the docket, the plaintiff filed a motion to stay. Dkt. No. 47. In that motion, he submitted that he had had difficulty finding an expert medical witness to work with him, given that he is a prisoner and is representing himself. He indicated that it had taken him some four months to save enough money to hire such a witness. Id. at 1-2. He notes that he did mention, in his June 15, 2015 response to the defendant's motion for summary judgment, that he was trying to hire an expert named Dr. James Sturm. Id. at 2 (quoting Dkt. No. 36 at 24). The motion explained that the plaintiff finally had been able to retain Dr. Sturm, though he did not yet have an expert witness report. Id. at 2. The plaintiff attached to the motion a copy of a $1,000.00 retainer check made out to Dr. Sturm. Id. at 4. The motion asked the court to stay any rulings on the motions for summary judgment until September 30, when he can file a declaration from his medical expert. Id. at 3.

The central question in this case is whether defendant Kaplan was deliberately indifferent to the plaintiff's pain when, on September 3, 2013, he discontinued the plaintiff's prescription for Tramadol abruptly, without tapering. Dkt. No. 1 at 6-7. This same question also lies at the heart of the

2

plaintiff's state law medical negligence and medical malpractice claims. If the plaintiff's expert medical witness were to submit a declaration containing a medical opinion regarding the effects of failure to taper, it could impact the court's decisions on the summary judgment motions.

The court acknowledges that the deadline for completing discovery passed on March 11, 2015—over six months ago. Dkt. No. 9. The court is cognizant, however, of the challenges facing a *pro se* plaintiff. The court also is mindful of recent guidance from the Seventh Circuit regarding cases involving medication and expert witnesses. In Rowe v. Gibson, No. 14-3316, 2015 WL 4934970 (7th Cir. Aug. 19, 2015), a *pro* se prisoner had brought an Eighth Amendment claim against prison administrators and other defendants who had prevented him from taking prescription heartburn medication prior to meals. The district court granted summary judgment in favor of the defendants. The Seventh Circuit reversed the case in part, and remanded to the district court.

The court, Judge Richard Posner writing, encouraged the district court to give serious consideration on remand to recruiting a lawyer to represent the plaintiff, appointing a neutral expert witness, or both. Id. at *10. Regarding experts, the court said:

> There are expert witnesses offered by parties and neutral (court-appointed) expert witnesses, but *defendants* serving as expert witnesses?—and in cases in which the plaintiff doesn't have an expert witness because he doesn't know how to find such a witness and anyway couldn't afford to pay the witness? And how could an unrepresented prisoner be expected to challenge the affidavit of a hostile medical doctor (in

3

> this case *really* hostile since he's a defendant in the plaintiff's suit) effectively? Is *this* adversary procedure?

Id. at *9.

In this case, the plaintiff has represented himself well so far. He effectively researched the drug at issue and, as Judge Posner did in Rowe, cited to the evidence he found on the Internet—in this case, the online version of The Physicians' Desk Reference. See id. at 4-5 (where Judge Posner cites to the Mayo Clinic's website and the Physician's Desk Reference web site). Now the plaintiff has managed to surmount the many obstacles Judge Posner described in Rowe, and has identified, retained and paid an expert witness. This court will do what it believes the Seventh Circuit encouraged the district court in Rowe to do—give the plaintiff an opportunity to fully present the evidence he has worked hard to develop. The court acknowledges that additional briefing will burden the defendant. But the court concludes that allowing the plaintiff to file his expert witness report, and allowing the defendant to respond to it, will lead to a fairer and more just resolution of the plaintiff's claims.

The court will grant the plaintiff's motion to stay its rulings on the two motions for summary judgment. The court will go further, however, and will deny without prejudice both parties' motions for summary judgment. The court takes this extra step for two reasons. First, the expert witness report may require changes both to the plaintiff's proposed findings of fact and his arguments in support of a motion for summary judgment. The defendant also may want to change or supplement his motion for summary judgment in light of the expert report. Second, once the defendant has an opportunity to review

4

the plaintiff's expert witness report, the defendant may wish—as the discovery rules allow—to obtain a medical expert/report of his own, or may wish to ask questions of the plaintiff's expert.

Below, the court provides deadlines by which the parties must produce expert witness reports and, if they choose to do so, file new motions for summary judgment. (The parties also may elect to re-file their original motions, if the plaintiff's expert witness report does not change their arguments.)

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for summary judgment (Dkt. No. 11), **DENIES WITHOUT PREJUDICE** the defendant's motion for summary judgment (Dkt. No. 30), and **GRANTS** the plaintiff's motion to stay (Dkt. No. 46).

The court further **ORDERS** that the plaintiff must produce his expert witness's report on or before **Monday, November 2, 2015**; the defendant may, if he chooses to do so, identify an expert witness and provide that witness's report on or before **Friday, December 4, 2015**, and the parties may file motions for summary judgment (or ask the court for leave to stand on their original summary judgment motions) on or before **Friday, January 15, 2016**.

Dated at Milwaukee this 21st day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

5